UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
LUIS FERNANDEZ,

Docket No.: 22-CV-06162

Plaintiff,

-against-

CITY OF ROCHESTER, CITY OF ROCHESTER POLICE SGT. OSIPOVITCH, CITY OF ROCHESTER POLICE OFFICER VAUGHN, CITY OF ROCHESTER POLICE OFFICER JIMENEZ, CITY OF ROCHESTER POLICE T/SGT. ALEXANDER, CITY OF ROCHESTER POLICE OFFICER JOHNSON, CITY OF ROCHESTER POLICE INVESTIGATOR R. HICKEY, CITY OF ROCHESTER POLICE SGT. INCE, CITY OF ROCHESTER POLICE SGT. FLANAGAN, CITY OF ROCHESTER POLICE OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities, MONROE COUNTY, MONROE COUNTY SHERIFF'S DEPARTMENT, MONROE COUNTY DEPUTY SHERIFFS JOHN DOES #11-20 (fictitiously named), in their individual and official capacities, TOWN OF OGDEN, TOWN OF OGDEN POLICE OFFICERS JOHN DOES #21-30 (fictitiously named), in their individual and official capacities, TOWN OF GATES, TOWN OF GATES POLICE OFFICERS JOHN DOES #31-40 (fictitiously named), in their individual and official capacities,

Defendants.
-------------------------------------------------------------------- X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

**HORN WRIGHT, LLP**
400 Garden City Plaza, Suite 500
Garden City, New York 11530

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... i

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .............................................................................................................1

LEGAL STANDARD......................................................................................................................1

ARGUMENT...................................................................................................................................2

POINT I
QUESTIONS OF FACT EXISTS REGARDING EXCESSIVE FORCE .....................................2

      A.   Whether Defendant Officers Knew or Should Have Known that
           Plaintiff Was Near the Door .................................................................................................2

      B.   Whether the Shotgun Was Aimed into the Apartment ....................................................5

      C.   Whether the Breaching Rounds Contained Projectiles that
           Could Penetrate the Door.......................................................................................................5

POINT II
THERE REMAINS FACTUAL BASIS FOR FAILURE TO INTERVENE CLAIMS .................6

POINT III
PLAINTIFF'S MUNICIPAL LIABILITY CLAIM MUST BE MAINTAINED ..........................7

CONCLUSION...............................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ........................................................ 2
*Amnesty Am. v. Town of W. Hartford*,
  361 F.3d 113, 123 (2d Cir. 2004) ................................................................................................ 2
*Celotex Corp. v. Catrett*,
  477 U.S. 317, 322–23 (1986) ...................................................................................................... 1
*City of Canton, Ohio v. Harris*,
  489 U.S.378, 388 (1989) .............................................................................................................. 7
*Howley v. Town of Stratford*,
  217 F.3d 141, 151 (2d Cir.2000) ................................................................................................. 1
*Jean-Laurent v. Wilkinson*,
  540 F. Supp. 2d 501, 513 (S.D.N.Y. 2008) ................................................................................. 6
*Lombardo v. City of St. Louis*,
  141 S. Ct. 2239, 2241 (2021) ...................................................................................................... 2
*Meiri v. Dacon*,
  759 F.2d 989, 998 (2d Cir. 1985) ................................................................................................ 1
*Ricci v. DeStefano*,
  557 U.S. 557, 586 (2009) ............................................................................................................. 1
*Ricciuti v. N.Y.C. Transit Auth.*,
  124 F.3d 123, 129 (2d Cir. 1997) ................................................................................................ 6
*Vivenzio v. City of Syracuse*,
  611 F.3d 98, 106 (2d Cir.2010) ................................................................................................... 1

**Statutes**

42 U.S.C. § 1983 ............................................................................................................................. 7
Fed. R. Civ. P 56 ......................................................................................................................... 1, 8

i

## PRELIMINARY STATEMENT

Plaintiff Luis Fernandez ("Plaintiff"), by and through his attorneys, Horn Wright, LLP, respectfully submits the instant Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. As set forth in the within Memorandum of Law, Plaintiff's Local Civil Rule 56.1(b) Counterstatement of Material Facts and supporting evidentiary exhibits, Plaintiff has ample factual and legal basis to defeat Defendants' summary judgment motion and sustain his claims against them.

## STATEMENT OF FACTS

For an in-depth Statement of Facts, Plaintiff respectfully refers this Court to Plaintiff's Response to Defendants' Local Civil Rule 56.1 Statement of Facts and Plaintiff's Counterstatement of Material Facts pursuant to Local Civil Rule 56.1(b).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); see *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  In reviewing a motion for summary judgment, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir.2010). "It is not the province of the court itself to decide what inferences should be drawn ...; if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper ...." *Vivenzio*, 611 F.3d at 106 (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir.2000). A party seeking summary judgment bears the burden

1

of establishing that no genuine issue of material fact exists. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

<u>ARGUMENT</u>

**POINT I**
**QUESTION OF FACT EXISTS REGARDING EXCESSIVE FORCE**

In analyzing **excessive force** claims, courts ask "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021) (internal quotation marks omitted). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

Defendants argue that the use of a breaching shotgun in this case was not 'deadly force' because 1) Defendant Officers did not know that anyone was near the apartment door, 2) the shotgun was not aimed into the apartment, and 3) the breaching rounds did not contain projectiles that would penetrate beyond the doorframe. However, based on the evidence presented, there necessarily exist disputes of fact regarding the above three claims that should be presented to the jury.

**A.    Whether Defendant Officers Knew or Should Have Known that Plaintiff Was Near the Door**

It is undisputed that the apartment door that Plaintiff was shot through had clear glass panel windows on it, comprising of three panes across and four panes top to bottom. While there was a flag covering the door, not all of the windows were covered. Officer Jimenez, who shot the breaching shotgun, testified that "the bottom, maybe, four or five inches were visible. So as we're

2

ascending at my eye level would – would see that – would see the bottom of the glass panel. And you could see feet, and you could hear footsteps running through that area." (Jimenez Dep. 29:22-30:4). Officer Jimenez's incident report, dated April 8, 2019, further confirms that he had view into the apartment, as it states "I set the breaching shotgun as stated above and applied one round to the deadbolt. After I did this a male could be heard yelling, 'one more minute.' And a male ran back across the doorway again **out of my view**." (Def. Exh G) (emphasis added). Plaintiff also affirms this, stating that the bottom row of the glass panes were unobstructed by the Puerto Rican flag hanging on the door. (Fernandez Affirm. ¶11). Therefore, the officers had view of the apartment through the bottom row of the glass panes to see if anyone was near the door and should have looked through the window to ensure that nobody was within the range of the breaching shotgun before discharging the firearm.

Unfortunately, this was obviously not done in this case. It is undisputed that Plaintiff's injuries were caused when the breaching shotgun was fired on the door. Plaintiff alleges that he was right by the door when the second shot was fired, trying to see what the noise from the stairs was. Defendants argue that, based on Plaintiff's injuries, Plaintiff **must have been** leaning against the door to prevent the Officers' entry. However, regardless of what Plaintiff was doing at the time of the breach, it is undisputed that he was right by the door when the second shot was fired. Since Officer Jimenez testified that he was able to see through the bottom row windows, the Officers by the door would have, or at least should have, known that Plaintiff was right next to the door when they were about to fire the second shot.

Given the situation, the only explanation for Plaintiff's injury is that the Officers were grossly negligent in failing to look through the window to ensure that nobody was within the range of the shotgun despite having clear view of the other side, or they knew that Plaintiff was by the

door but fired regardless. Making matters worse, Officer Jimenez and the other Officers failed to give any warning before shooting the shotgun such as "move away from the door", and instead only yelled "police search warrant":

Q: Prior to discharging the breaching weapon, did you give any notices or commands?
A: Not after the "Police search warrant." No.

Jimenez Dep 33:4-8. Giving proper warning before discharging the firearm would have warned Plaintiff of the imminent danger and allowed him to stay away from the range of the shotgun.

Therefore, Defendants' argument that the Officers did not know that Plaintiff was near the door contradicts with their contention that Plaintiff was leaning against the door, as they would have been able to see through the glass panel and see that Plaintiff was right by the door. Furthermore, even if, *arguendo*, Plaintiff was leaning against the door to prevent entry, it cannot be said that he put himself in harm's way when the officers were able to see where Plaintiff was and discharged the gun regardless of the fact that he was by the door without any warning. Although Officer Vaughn and Sgt. Osipovitch denied being able to see through the glass panes, this contradicts Officer Jimenez's testimony, thereby creating questions of fact even among Defendants' testimonies.

For the foregoing reasons, Defendant Officers knew, or should have known, that Plaintiff was within the range of the breaching shotgun but chose to use deadly force anyway, constituting excessive force. Given the severity of Plaintiff's injury, had Plaintiff's head been near the door, the damage could have been deadly. As there remains question of fact as to whether Defendants knew that Plaintiff was right by the door when they chose to discharge the breaching shotgun, Defendants' summary judgment must be denied.

**B.      Whether the Shotgun Was Aimed into the Apartment**

Defendants' argument that the shotgun was aimed at the door, not into the apartment, is closely connected to the question whether Defendants knew that Plaintiff was by the door – it does not matter whether the gun was pointed only at the door if Plaintiff was next to the door and Defendants knew of Plaintiff's location.

Again, it is undisputed that Plaintiff's injuries were caused as a result of Defendants' discharge of the shotgun. Officer Jimenez testified that he received training in using the ballistic shotgun, so he must have known what kind of damage the gun could cause behind the door. He knew that a person was right next to the door and discharged the gun anyway. So, the fact that the gun was not pointed into the apartment remains irrelevant. As it is Defendants' own position that Plaintiff was leaning against the door, Defendants' argument that the gun was fired at the door and not at Plaintiff is meaningless – it is a mere question of semantics.

**C.      Whether the Breaching Rounds Contained Projectiles that Could Penetrate the Door**

Finally, Defendants argue that they did not use deadly force because "the breaching rounds did not contain projectiles that would penetrate beyond the doorframe." Presumably, Defendants are referring to the fact that the breaching shotgun shoots compressed zinc rounds. According to Officer Jimenez's report:

> "[t]his method of breach consists of placing the muzzle of the breaching shotgun at a 45 degree andle in and 45 degree angle down; allowing for the compressed zinc round and the pressure created to dissipate into the door and door frame. Following the impact of hardened door materials, the round will disintegrate into a micro-pulverized powder."

(Def. Exh. G).

However, the injury itself, as well as the medical reports for Plaintiff, clearly contradicts Defendants' third argument. Plaintiff's injury here was not just a cut – Plaintiff's elbow was sliced

5

open by the shot, to the point muscles and bones were clearly showing through the wound, and Plaintiff's humerus bone was fractured. (ER Record at p.25). Furthermore, unlike Officer Jimenez's statement that the bullet would disintegrate upon impact, an x-ray of Plaintiff's injury showed metallic fragments (*Id*. at p.26). The hospital also noted "42 y.o. male with a gunshot wound to the left elbow with lateral epicondyle fracture and large wound with wood and **metal debris**." (*Id*. at p.20). It is apparent that not all zinc rounds dissipated and some metallic debris exited the other side of the door into Plaintiff's elbow. While it may be true that the zinc bullets are not as deadly as a normal bullet, the wound speaks for itself – if this had been another part of the body like the head or any arteries, the injury could easily have been deadly.

For all of the foregoing reasons, giving all factual inferences that could be drawn in favor of Plaintiff, there remains questions of fact regarding whether Defendants used excessive force against Plaintiff. Defendants' summary judgment motion therefore must be denied.

## POINT II
## THERE REMAINS FACTUAL BASIS FOR FAILURE TO INTERVENE CLAIMS

To establish a claim for failure to intervene, a plaintiff must show (i) the officer's failure "permitted fellow officers to violate [plaintiff's] clearly established statutory or constitutional rights," and (ii) it was "objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." *Ricciuti v. N.Y.C. Transit Auth*., 124 F.3d 123, 129 (2d Cir. 1997) (internal quotation marks and citations omitted). The use of force must also have been "of a sufficient duration" to afford the officer a "reasonable opportunity" to intervene. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 513 (S.D.N.Y. 2008).

Defendants argue that failure to intervene claims cannot be asserted against Officer Vaughn and Sgt. Osipovitch because they "had no reason to believe that Mr. Fernandez was propping himself against that door" and therefore did not have an opportunity to intervene. (Def. Memo p.

6

19). However, as established above, there is contradiction among the Officers' testimonies – Officer Jimenez clearly stated that he was able to see through the bottom glass panels while Officer Vaughn and Sgt. Osipovitch denied being able to see through the glass panes. Therefore, there is a question of fact remaining whether Officer Vaughn and Sgt. Osipovitch knew that Plaintiff was near the door when the second breaching shot was fired.

For the foregoing reasons, Defendants' summary judgment motion to dismiss Plaintiff's failure to intervene claims against Defendants Vaughn and Osipovitch must be denied. Plaintiff concedes that the failure to intervene claims against Defendants Flanagan, Alexander, and Ince should be dismissed as they were not in position to see what was occurring at the top of the staircase. Likewise, Plaintiff concedes that the failure to intervene claims against Defendant Officer Jimenez should be dismissed as he was the one who discharged the gun against Plaintiff.

## POINT III
## PLAINTIFF'S MUNICIPAL LIABILITY CLAIM MUST BE MAINTAINED

"[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S.378, 388 (1989). While Defendants argue that Plaintiff's municipal liability claims must be dismissed because "there was no evidence or testimony developed over the course of discovery to substantiate any of these claims," (Def. Memo at p. 20) there remains question of fact as to whether the municipality properly trained the Individual Officers for the subject situation.

Namely, Officer Jimenez testified that he received ballistic shotgun training in 2018 or 2019, shortly before the incident at hand. Officer Jimenez's incident report sets forth the process for using the shotgun to breach a door, including that the bullets would disintegrate upon impact with the door. (Def. Exh. G). Although the officers had a view into the apartment and should have

7

noticed Plaintiff near the door, they still discharged the shotgun into the door. Finally, no warnings were given to move away from the door or to keep clear of the door before discharging the weapon.

All of these grossly negligent behaviors that resulted in Plaintiff's injury can be attributed to lack of proper training provided by the municipality – the breaching officers should have been trained to ensure that nobody was behind the door before the breach, and to warn anyone by the door before shooting into the gun given the damage it could cause to someone close. Even if the zinc pallets are supposed to dissipate upon impact, the breaching officers should be trained about the damage it could cause to someone near the door. Here, there were three officers who were by the door who should've noticed Plaintiff on the other side of the door, but the breaching shotgun was discharged with deliberate indifference to Plaintiff's safety. Therefore, there remains questions of fact as to whether the municipality properly trained the Individual Officers, and Plaintiff's municipality liability claim must survive.

## CONCLUSION

Based on the forgoing, it is respectfully requested that this Court deny Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P 56.

Dated: Garden City, New York
November 22, 2024

**HORN WRIGHT, LLP**
*Attorneys for Plaintiff*

By:     /s/*Pablo A. Fernandez*
Pablo A. Fernandez
400 Garden City Plaza, Suite 500
Garden City, New York 11530
Ph: 516.355.9696
paf@hornwright.com

8