UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LUIS FERNANDEZ,

Plaintiff,

-v-

CITY OF ROCHESTER, POLICE SGT.
OSIPOVITCH, POLICE OFFICER VAUGHN,
POLICE OFFICER JIMENEZ, POLICE T/SGT.
ALEXANDER, POLICE OFFICER JOHNSON,
POLICE OFFICER JOHNSON, POLICE
INVESTIGATOR R. HICKEY, POLICE SGT. INCE,
POLICE SGT. FLANAGAN, CITY OF ROCHESTER
POLICE OFFICER JOHN DOES #1-10,
MONROE COUNTY, MONROE COUNTY
DEPUTY SHERIFF JOHN DOES #11-20,
TOWN OF OGDEN, TOWN OF OGDEN
POLICE OFFICERS JOHN DOES #21-30,
TOWN OF GATES, TOWN OF GATES
POLICE OFFICER JOHN DOES #31-40,

Defendants.

**DEFENDANTS' REPLY
MEMORANDUM OF LAW
IN SUPPORT OF SUMMARY
JUDGMENT MOTION**


**Case No.: 22-cv-6162 (FPG)**

---

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in reply to the Plaintiff, Luis Fernandez's papers opposing the Defendants' summary judgment motion, and it is submitted in further support of that motion.

## STATEMENT OF FACTS

The facts germane to the Defendants' reply to Mr. Fernandez's opposition are more fully set forth in their Attorney's Reply Declaration and in the material referenced therein and attached as exhibits thereto. The Court is respectfully referred there. The more salient points are included here.

Almost all of the material facts and circumstances concerning the issuance and the execution of the No-Knock Warrant (NKW), and what occurred after the breach and entry, are largely unchallenged by Mr. Fernandez.  His opposition to the motion is fatally undercut by a pair of key admissions and, most particularly, by the medical record and included photo on which he relies.  All of this dispositively establishes that he knew that a search warrant was being executed by forced entry and that he was actually resisting it by leaning against the door to delay entry and afford time for disposal of the loaded pistol and the wrapped kilogram of cocaine, which were the subjects of the warrant.

First, although he denies those portions of paragraphs 17 and 18 of the Defendants' Rule 56 Statement that notifications, "Police! Search Warrant!," were yelled by the Entry Team (ET) members from the time of the initial breach of the lower, exterior door, he admits at page 4 of his Memorandum that they were given—"Making matters worse, Officer Jimenez and the other Officers failed to give any warnings before shooting the shotgun, such as 'move away from the door', and instead only yelled 'police search warrant' " (Dkt #52-6, p. 4).  He thus knew who was entering the staircase from the lower, exterior door, which he claims is what prompted him to go to the apartment door to look down the stairs, and he knew why they were there.

Second, although he claims at paragraph 10 of his Affirmation that the loud bang he heard outside the door was, he "later found out," from the breaching shotgun, he admits at paragraph 9 of his Statement of Material Facts (Dkt #53) that he in fact heard that first shot and identified it as such.  This is consistent with Officer Johnson's deposition testimony that the ET members wore "Peltors", which are ear protection over their ears to muffle the sounds of a shotgun blast if a ballistic breach were necessary.

Post-breach photos of several members of the ET are seen wearing those devices over their ears. The blast was loud and was obviously from a shotgun.

Third, the hospital chart excerpt, which was not produced with Mr. Fernandez's Rule 26 Disclosure or in discovery, includes the results of the x-ray of his left arm, which detected metallic (i.e., metal-like) debris **wholly inside** of the wound and not elsewhere in or on his upper arm or forearm. It was not detected by the naked eye, though the wood splinters mentioned in the records were and were also **wholly within** the wound.

Officer Jimenez's Incident Report is quoted at page 5 of Mr. Fernandez's Memorandum where the Officer explains that the compressed zinc round and the pressure created to dissipate into the door and doorframe following the impact of hardened door material disintegrates the round into a micro-pulverized zinc powder. That is precisely what the x-ray of his elbow detected—the micro-pulverized zinc powder embedded into the elbow wound with the shockwave from discharge of the second ballistic round.

Given that no other part of his arm was reported as having zinc debris on or in it on the x-ray, nor were there wood splinters anywhere but **inside** the wound, this establishes that his elbow was in contact with the doorframe and jamb when that round was discharged. No rational jury could reasonably believe otherwise, given Officer Jimenez's and Inv. Hickey's unrebutted testimony about what the ballistic, zinc rounds do and where one would have to be with regard to where on the doorjamb and frame the round is discharged to sustain an injury.

The photos of his left elbow injury taken in the driveway at 69 Avery Street before he was transported by ambulance and the photo included in the Strong Hospital ED

3

chart show that this was a very discrete, near-surgical, right-angled injury and neither his upper arm above the elbow, nor his forearm below it were injured.

Fourth, he doesn't challenge Officer Jimenez's testimony and Incident Report about what he heard and saw between the ballistic breach attempts—a male voice saying, "one more minute," and footsteps scurrying past the apartment door and off into the apartment. Nor does he, or can he, dispute where the loaded pistol and the wrapped kilogram of cocaine were found, which were the subject of the NKW and why forcible entry was authorized, and which he and Mr. Ocasio pled guilty to possessing and are currently serving 20-year sentences. They had been dropped down the air duct leading from upstairs apartment.

As is more fully set forth in the Defendants' original Memorandum, in Mr. Fernandez's Memorandum, and below, summary judgment is appropriately granted where no rational jury could find in Mr. Fernandez's favor and it is respectfully submitted that no reasonable jury could find credible any of his claims in opposition to this motion.

He was aware, by his own admission at p. 4 of his Memorandum, that the Police were there to execute a search warrant. He was also aware that a shotgun was being used to effect entry.

Mr. Fernandez's vague description of where he was standing from the first ballistic breach attempt to the second and of not having moved, according to his Affirmation, reflects the horns of the dilemma on which he finds himself. He had to be close enough to the door to to prompt what he claims was a duty to advise him to move away and stay back, which is the linchpin of his entire opposition, but he can't be up against the doorframe without tacitly conceding that he was aware that a search warrant

4

was being executed and was actively resisting it by attempting to delay forced entry. The physical evidence on which he relies, as well as the reference in his medical records to "metallic debris" being found *inside* his left elbow wound on x-ray, are dispositive of this.  His elbow had to be against the doorframe near the deadbolt lock to sustain such a discrete injury with wood and metallic debris only *inside* of the wound.

In view of all of this, Mr. Fernandez should have unlocked and opened the apartment door before the second ballistic breach attempt, which would have obviated any further need for forced, dynamic entry and no injury would have resulted.

For all of these reasons, and for the reasons which follow, summary judgment should be granted with regard to all three of Mr. Fernandez's Causes of Action and this suit should be dismissed.

## ARGUMENT

## POINT I

## THE RULES REGARDING SUMMARY JUDGMENT.

In their original Memorandum (Dkt #47-1, Point I, p. 12) the Defendants cite, *inter alia*, Gallo v Prudential Residential Services, Ltd., 22 F.3d 1219, 1224 [2d Cir. 1994] and Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574, 587 [1986], which hold, respectively, that summary judgment is appropriately granted where no rational jury could find in favor of the non-moving party because there is no genuine issue of material fact, and that, "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'."

This dovetails with the cite in Mr. Fernandez's Memorandum (Dkt 52-6, Point I, p. 2) to Amnesty Am. v Town of W. Hartford, 361 F.3d 113, 123 [2d Cir. 2004].  The

quoted portion reads, "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Stated conversely, summary judgment ***is appropriately granted*** where no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable.

Mr. Fernandez's argument, which is in part self-contradictory, and the evidence on which he relies, most particularly the hospital record excerpt regarding the x-ray findings regarding his left elbow, are dispositive of this suit.

## POINT II

## MR. FERNANDEZ'S OPPOSING PAPERS FAIL TO RAISE ANY GENUINE, MATERIAL FACTUAL ISSUES SUFFICIENT TO AVERT SUMMARY JUDGMENT OF HIS EXCESSIVE FORCE CLAIM.

Mr. Fernandez does not, or cannot dispute that the NKW issued for the upper apartment at 69 Avery Street expressly authorized and anticipated dynamic, forcible entry and some resultant property damage, that giving notice of authority and purpose could have endangered the lives or safety of the executing Officers, or others, and that the property sought could be easily or quickly destroyed or disposed of (NY CPL §690.35(b)(4); U.S. v Ramirez, 523 U.S. 65, 67 [1989]; and Richards v Wisconsin, 520 U.S. 385, 394 [1997]).

He also does not, or cannot dispute the propriety of ballistic breach of the upper apartment door, given the "fatal funnel" in which the ET members were in on the staircase, which required swift, decisive action to breach the door and enter the

6

apartment.  He also does not dispute that Officer Jimenez anchored and aimed the shotgun only into the doorjamb and frame, not into the apartment or knowingly at him, or that the first attempt caused him no injury, though he claims that the remained in the same position when the second attempt occurred.

His excessive force claim hinges on his unsubstantiated supposition that Officer Jimenez should have known that the was "right by" the door because the flag/towel left the bottom few inches of the lower three glass panes uncovered, but that is directly contradicted by Officer Jimenez's testimony that he heard footsteps scurry away from the door and a male voice say, "one more minute," just before the second ballistic breach attempt.

He concedes, and Officer Jimenez testifies, that Officer Jimenez was standing at the top of the stairs with the doorknob and deadbolt lock at eye-level and it is rank supposition that at that position, he could have seen anything inside of the apartment below the towel from that angle.  He has no idea what the Officer's line-of-sight was.

Mr. Fernandez admits, however, that the ET members yelled "Police! Search Warrant!" from the time of their first overt action and that he identified the first ballistic breach attempt as a shotgun firing into the doorjamb and frame.  Although he admits to his and Mr. Ocasio's possession the loaded pistol and wrapped kilogram of cocaine found secreted at the bottom of the air duct in the basement, his half-hearted denial that they were secreted there in an attempt to dispose of them during the attempted forced entry rings hollow.  Given the guilty pleas, it is submitted that Mr. Fernandez is Heck-barred from denying this (Heck v Humphrey, 512 U.S. 477 [1994]).

The SWAT photos of the doorjamb and frame on the outside and inside show the

7

precision of the ballistic breach attempt and how limited the damage was. That force certainly was not excessive.

The photographs of Mr. Fernandez's left elbow injury and the imaging done in the hospital leave no reasonable doubt that he was leaning against the door with his elbow directly over the area of the deadbolt lock to attempt to delay entry and execution of the warrant and afford time for the loaded weapon and drugs to be hidden. This is precisely what the NKW was issued to prevent and why swift, unannounced, dynamic entry was authorized. Mr. Fernandez's admissions leave no doubt that he was aware of what was occurring and why and was attempting to delay entry.

In sum, there was no force knowingly used on Mr. Fernandez, the decision to attempt breach of the door ballisticly was appropriate given the circumstances and the exigencies in which Officer Jimenez and the ET found themselves, and he is entitled to summary judgment of the excessive force claim.

Alternatively, Officer Jimenez is entitled to qualified immunity and to dismissal of this claim for the reasons set forth in Point V of the Defendants' original Memorandum (Dkt #47-1, pp. 21-23). Mr. Fernandez's opposing papers do not address this at all and it is respectfully submitted that Officer Jimenez's entitlement to qualified immunity is clearly established.

## POINT III

### MR. FERNANDEZ'S OPPOSING PAPERS FAIL TO ESTABLISH ANY BASIS AGAINST DISMISSAL OF HIS FAILURE TO INTERVENE CLAIM.

In his Memorandum of Law, Mr. Fernandez concedes that this cause of action cannot apply to Officer Jimenez for the reasons set forth in the Defendants' original

8

Memorandum (Dkt #47-1, p. 17), or to Sgts. Flanagan or Alexander, or Lt. Ince, also for the reasons set forth there (p. 18). He does not mention or address the request for dismissal on behalf of Sgt. Johnson and Inv. Hickey, but for the reasons set forth in the Memorandum, they are clearly entitled to summary judgment.

Mr. Fernandez's opposition to dismissal on behalf of Sgt. Osipovitch and Officer Vaughn is based on rank, unsupportable speculation about what he claims they should have been able to see beneath the flag/towel into the apartment. He does not account for their positions on the stairs or what their line of sight would have been and this supposition, in the face of their denials, is legally insufficient to avert summary judgment, based upon the standards concerning his counter-burden of proof set forth in Point I of the Defendants' original Memorandum. "[M]ere conclusory allegations or denials ... cannot by themselves create a genuine issue or material of fact where none would otherwise exist" (Hicks v Daines, 593 F.3d 159, 166 [2d Cir. 2010]; quoting Fletcher v Atex, Inc., 68 F.3d 1451, 1456 [2d Cir. 1995]). Further, ballistic breaching was anticipated and there was no apparent constitutional violation occurring.

**POINT IV**

**THE CONTENT OF POINT III OF
MR. FERNANDEZ'S MEMORANDUM
AND THE CASE HE CITES ESTABLISH
THE CITY'S ENTITLEMENT TO
SUMMARY JUDGMENT OF HIS
MUNICIPAL LIABILITY CLAIM.**

The case on which Mr. Fernandez relies, City of Canton, Ohio v Harris, 489 U.S. 378 [1999], holds that:

> "[T]he inadequacy of police training may serve as the basis for the §1983 liability only where the failure to train amounts to deliberate indifference to the rights of

9

persons with whom the police come into contact. This rule is most consistent with our admonition in Monell [v New York City Department of Social Services, 436 U.S. 658,] at 694 [1978] ... and Polk County v Dodson, 454 U.S. 312, 326 ... [1981], that a municipality can be liable under §1983 only where its policies are the 'moving force behind the constitutional violation.' "

***

"[M]unicipal liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers. Only where a failure to train reflects a deliberate or conscious choice by a municipality—a policy as defined by our prior cases—can a city be liable for such a failure under §1983" (City of Canton Ohio, at 389, internal quotations omitted, but citing Pembaur v Cincinnati, 475 U.S. 469, 483-484 [1986] and Oklahoma City v Tuttle, 471 U.S. 808, 823 [1985]).

Nothing in Mr. Fernandez's opposing papers affords a basis for imposing supervisory liability on the City. Despite his claim that all of the breaching Officers lacked proper training, of the three ET members at the apartment door at the time of the breach, only Officer Jimenez was trained as a breacher. Sgt. Osipovitch and Officer Vaughn both testified at deposition that they were not members of the breaching team and were not trained as breachers. So, this claim could only apply to Officer Jimenez.

Officer Jimenez testified, however, that he in fact had breaching training and at ¶62 of his Declaration, he testified that he would not have fired the breaching shotgun if he had known that anyone was up against the door. Mr. Fernandez's claim about what Officer Jimenez or the other two ET members should have seen is based on rank supposition. He has no idea what their line of sight was from where they were standing with respect to the bottom of the bottom row of panes.

More dispositively, however, all of Mr. Fernandez's claims concern the single, isolated event of the second ballistic breach, he neither mentions nor identifies any

10

person at the policy making level who supposedly failed to provide adequate training, nor, most significantly, does he identify any alternatives from among a range of alternatives and a deliberate choice to follow one that would constitute a "policy" as defined in the applicable case law.  So, his claims fail to establish the elements and meet the standard set forth in the very case on which he relies.  Accordingly, it is respectfully submitted that the City is entitled to summary judgment of this cause of action.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Officer Jimenez is entitled to summary judgment of the excessive force claim and/or is entitled to qualified immunity on it, that Officer Vaughn and Sgt. Osipovitch are entitled to summary judgment and dismissal of the failure to intervene claim, as they are the only Defendants against whom this could apply, and that the City is entitled to the Municipal Supervisory Liability claim, all pursuant to FRCP Rule 56.

DATED:  December 13, 2024
　　　　Rochester, New York

Respectfully submitted,

PATRICK BEATH, Corporation Counsel

BY: _____
CHRISTOPHER S. NOONE, Esq., of Counsel
Attorneys for Defendants
30 Church Street, Room 400A City Hall
Rochester, New York 14614
Telephone:  (585) 428-6753
chris.noone@cityofrochester.gov

11