UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LUIS FERNANDEZ,

                        Plaintiff,

v.

CITY OF ROCHETER, *et al.*,

                        Defendants.

Case # 22-CV-06162-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Luis Fernandez brings this civil rights action against Defendants Town of Ogden Police Officer John Does #21-30, Town of Gates Police Officer John Does #31-40, the City of Rochester, and Rochester Police Officers Sgt. Robert Osipovitch, Mark Vaughn, Alex Jimenez, Sgt. Eric Alexander, Andrew Johnson, Investigator Ryan Hickey, Sgt. Kevin Flanagan, Sgt. Brandon Ince, and John Does #1-10.[1] ECF No. 1. Defendants City of Rochester, Sgt. Osipovitch, Officer Vaughn, Officer Jimenez, Sgt. Alexander, Officer Johnson, Investigator Hickey, Sgt. Flanagan, Sgt. Ince, and City of Rochester Police Officer John Does #1-10 (collectively the "City Defendants") move for summary judgement as to all of Plaintiff's claims. ECF No. 47. Plaintiff opposes the motion. ECF No. 52. For the reasons that follow, the City Defendants' Motion for Summary Judgment (ECF No. 47) is GRANTED IN PART AND DENIED IN PART.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] The suit originally named Monroe County, Monroe County Deputy Sheriff John Does #11-20, the Town of Ogden, and the Town of Gates as Defendants as well. However, after motion practice, they have been terminated as parties.

1

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

According to the City Defendants, during and prior to April 2019, the Greater Rochester Area Narcotics Enforcement Team ("GRANET") was investigating Plaintiff and Augustin Ocasio as well as the upstairs apartment that Ocasio rented at 69 Avery Street. ECF No. 47-2 ¶ 1. As part of GRANET's investigation, one of its investigators applied for and obtained a "no-knock" search warrant from New York State Supreme Court Justice Victoria Argento. *Id.* ¶ 2. That warrant specifically stated that

> adequate grounds exist for authorizing the executing police officers to enter the premises to be searched without giving notice of authority and purpose, upon the grounds that there is reasonable cause to believe that property sought to be seized may be easily and quickly destroyed or disposed of and that the giving of such notice may endanger the life or safety of the executing officer or another person, pursuant to section 690.45(7) of the New York State Criminal Procedure Law.

ECF No. 47-2 at 51. According to the City Defendants, because Plaintiff and Ocasio were known violent felons, and based on the belief that firearms and drugs were in the apartment, GRANET requested that the Rochester Police Department's SWAT unit execute the warrant. ECF No. 47-2

¶ 3. The SWAT unit agreed to execute the warrant, and GRANET provided intelligence on the occupants and the house, including photographs. *Id.* ¶¶ 4–5.[2]

It is undisputed that on April 5, 2019, at approximately 10:00 am, the SWAT unit executed the warrant on 69 Avery Street. *Id.* ¶ 10; ECF No. 53 ¶¶ 1–2. According to the City Defendants, the door to the basement and the exterior door leading up to the apartment were breached using a ram. ECF No. 47-2 ¶ 11. Four officers then made their way up the stairwell leading to the apartment. *Id.* ¶ 12. These officers included Officer Jimenez, who was assigned as the breacher for the upper apartment door, Sgt. Osipovitch, who was assigned as "lethal cover" to address any lethal force directed at the officers during the entry, Officer Vaughn, who was assigned as "less lethal cover" for any non-lethal threats encountered, Sgt. Johnson, who was positioned behind them, and Investigator Hickey, who remained near the landing at the base of the stairs to coordinate the execution of the warrant. *Id.*

It is undisputed that the stairwell leading up to the apartment was very narrow and that the officers could not go up the stairs side-by-side. ECF No. 47-2 ¶ 14; ECF No. 53 at 6. There is also no dispute that there was no landing at the top, the doorknob and deadbolt lock were at Officer Jimenez's eye level, and that the apartment door was wooden framed with twelve glass pane inserts. *Id.* The parties also agree that Officer Jimenez checked the door, and it was locked. ECF No. 47-2 ¶ 15; ECF No. 53 at 6. The parties further agree that the glass panes on the door were covered on the inside with a large Puerto Rican flag or towel—but disagree as to what extent. *Id.* The City Defendants maintain that it obscured the view into the apartment, No. 47-2 ¶ 15, while

---

[2] As for the City Defendants' claims in this paragraph, Plaintiff's response is that he "lacks sufficient information to form a belief as to the truth of th[ese] statement[s]." ECF No. 53 ¶¶ 2–3. However, the City Defendants' have supplied the signed warrant, which corroborates its existence and its contents. *See* ECF No. 47-2 at 50–51.

3

Plaintiff maintains that the flag did not fully cover the bottom row of the glass panes, permitting view into the apartment through those panes, ECF No. 53 at 6.

According to the City Defendants, due to the narrow confines of the stairwell, the absence of a landing, the location of the knob and lockset, and the need for swift breach and entry into the apartment to neutralize potential lethal threats and prevent disposal or destruction of evidence, Officer Jimenez decided that a ballistic breach of the door was most appropriate and used that method. ECF No. 47-2 ¶ 19. Prior to the first ballistic breach attempt, Officer Jimenez claims that he heard male voices and heard footsteps. *Id.* ¶ 20. The City Defendants maintain that to execute the ballistic breach, Officer Jimenez used a breaching shotgun, which had a device attached to the end of the barrel with serrated teeth to anchor it to a doorframe and doorjamb. *Id.* ¶ 21. The City Defendants also maintain that only 12-gague breaching rounds were used, which they claim contained no projectiles, only zinc pulvules designed to dissipate into a fine powder upon contact with hard surfaces. *Id.* The City Defendants further maintain that Officer Jimenez followed standard procedure by anchoring the shotgun muzzle into the doorjamb and frame at a 45° angle to the jamb and deadbolt lock, and at a 45° angle down toward the floor, and fired one breaching round, which did not defeat the lock. *Id.* ¶ 22.

It is undisputed that Plaintiff was standing somewhere in the apartment and was not injured by the first ballistic breach attempt. ECF No. 47-2 ¶ 23; ECF No. 53 at 8. Because the first round did not defeat the lock, Officer Jimenez racked another round, following the same protocol as before, and fired a second round. ECF No. 47-2 ¶ 24. Plaintiff claims that he was injured as a result of the second breaching round. ECF No. 53 ¶ 12. The City Defendants claim that from the time the lower exterior door was breached, the officers were yelling "Police! Search Warrant!," ECF

No. 47-2 ¶ 17, but Plaintiff claims that the officers gave no warnings, notices, or commands before shooting the breaching shotgun both times. ECF No. 53 ¶¶ 7, 11.

Plaintiff claims that he heard loud rumbling noises and went to the door to see what was causing the noise. *Id.* ¶ 2. Plaintiff maintains that he was standing near the door trying to find the source of the noise when he heard the first shot, and that Officer Jimenez fired the second shot into the door before Plaintiff could realize what was happening. *Id.* ¶¶ 9–10. Plaintiff claims that the second shot hit him on the left elbow, causing immense pain and forcing him away from the door. *Id.* ¶ 12. He maintains that when he was shot, he was not leaning against the door in any way. *Id.* ¶ 13. Officer Jimenez maintains that at some point between the two ballistic breach attempts he heard a male voice say, "one more minute." ECF No. 47-2 ¶ 35. The City Defendants maintain that the second ballistic breach attempt also did not defeat the lock, so Officer Jimenez turned and "mule kicked" the door frame, which was also unsuccessful. *Id.* ¶ 27. He then used a ram to strike that area several times, which did defeat the lock. *Id.* ¶ 28.

It is undisputed that when the officers entered the apartment, Officer Vaughn found Plaintiff laying on the floor between the kitchen and dining room with a large, right-angled, open gash on his left elbow with wood splinters in it and that he was taken into custody there. ECF No. 47-2 ¶ 30; ECF No. 53 at 9. It is also undisputed that Plaintiff was attended to by a medic at the apartment. ECF No. 47-2 ¶ 32; ECF No. 53 at 10. Plaintiff was then taken to Strong Memorial Hospital in an ambulance. ECF No. 47-2 ¶ 33; ECF No. 53 ¶ 16. An x-ray of Plaintiff's wound found metallic fragments inside the wound. ECF No. 53 ¶ 17. Plaintiff claims that he had to receive multiple surgeries to his elbow as a result of being shot by Officer Jimenez. *Id.* ¶ 18. Plaintiff and Ocasio were ultimately charged with and pleaded guilty to criminal possession of a loaded weapon and

criminal possession of a kilogram of cocaine, both of which were discovered while executing the search warrant at issue. ECF No. 47-2 ¶ 33.

On April 4, 2022, Plaintiff brought the present action in this Court. ECF No. 1. In his complaint, Plaintiff brought three claims (I) for excessive force in violation of 42 U.S.C. § 1983 against all Defendants except the municipalities; (II) for failure to intervene in violation of 42 U.S.C. § 1983 against all Defendants except the municipalities; and (III) for municipal liability in violation of 42 U.S.C. § 1983 against the municipalities. *Id.* After motion practice, the only remaining defendants are the City Defendants, Town of Ogden Police Officer John Does #21-30, and Town of Gates Police Officer John Does #31-40.

## DISCUSSION

The City Defendants move for summary judgment on all three of Plaintiff's claims. The Court discusses each in turn.

**I.     First Claim: Excessive Force in Violation of 42 U.S.C. § 1983**

Plaintiff's first claim is for excessive force against all the City Defendants except the City of Rochester. As an initial matter, the City Defendants argue that the excessive force claim can only be brought against Officer Jimenez, as he was the one who fired the breaching rounds. ECF No. 47-1 at 10. Plaintiff did not respond to this argument in his Opposition to Defendants' Motion for Summary Judgment (ECF No. 52-6). When a party is counseled, a court may infer from a party's partial opposition—*i.e.*, a response that references some claims or defenses but not others— that relevant claims or defenses not defended in the opposition have been abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014). Here, Plaintiff is counseled and did not explicitly respond to this argument in his opposition. Consequently, the Court considers the claim to be abandoned as to Defendants Sgt. Osipovitch, Officer Vaughn, Sgt. Alexander, Officer Johnson,

Investigator Hickey, Sgt. Flanagan, Sgt. Ince, and City of Rochester Police Officer John Does #1-10, and the claim is dismissed as to these Defendants.

As to Officer Jimenez, he argues that he is entitled to summary judgment on the excessive force claim because he did not use excessive force when breaching the door. ECF No. 47-1 at 12. Alternatively, he argues that he should be granted summary judgment on the excessive force claim because he is entitled to qualified immunity. *Id.* at 21. The Court discusses both arguments below.

   a. **Substantive Claim**

The Fourth Amendment governs "the reasonableness of the manner in which a search or seizure is conducted." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)). When determining whether a use of force was "reasonable" under the Fourth Amendment, the Court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). Therefore, the Court must ask "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotation marks omitted). In doing so, the Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Plaintiff argues that Officer Jimenez's use of the breaching shotgun was objectively unreasonable under the circumstances, constituting excessive force. ECF No. 1 ¶ 47. Officer Jimenez argues that he should be granted summary judgment on this claim because (1) Officer Jimenez did not know that anyone was near the apartment door when he fired the breaching rounds;

7

(2) the breaching rounds were fired at the door, not into the apartment; and (3) the breaching rounds did not contain projectiles that would penetrate beyond the doorframe. ECF No. 47-1 at 15. Specifically, Officer Jimenez argues that Plaintiff was aware that a search warrant was being executed and that he was leaning against the door to allow for more time to hide evidence. *Id.* at 16. Officer Jimenez argues that Plaintiff "put himself in harm's way and risked physical injury to try to buy time," and therefore, there is no validity to his claim of excessive force. *Id.*

In response, Plaintiff argues that there are questions of fact that preclude summary judgment. ECF No. 52-6 at 5. First, he argues that there is a dispute of fact whether Officer Jimenez knew that Plaintiff was near the door. *Id.* It is undisputed that the door had clear windowpanes and that there was some sort of flag or towel covering the windowpanes on door. No. 47-2 ¶ 15; ECF No. 53 at 6. Officer Jimenez maintains that that he did not know that anyone was behind the door. ECF No. 47-1 at 15. On the other hand, Plaintiff cites to evidence that not all of these panes were covered, and therefore, argues that Officer Jimenez should have been able to see Plaintiff behind the door. ECF No. 52-6 at 5–6.

The first piece of evidence Plaintiff cites is Officer Jimenez's deposition testimony, where he stated that "the bottom, maybe, four or five inches [of the door] were visible. So as we're ascending at my eye level would—would see that—would see the bottom of the glass panel. And you could see feet, and you could hear footsteps running through that area." ECF No. 52-2 at 30–31. The second piece of evidence cited is Officer Jimenez's incident report, dated April 8, 2019, which states, "I set the breaching shotgun as stated above and applied one round to the deadbolt. After I did this a male could be heard yelling, 'One more minute.' and [sic] a male ran back across the doorway again out of my view." ECF No. 47-2 at 63. The final piece of evidence Plaintiff cites is his own affirmation, in which he maintains that the bottom windowpanes were unobstructed, so

8

"anyone standing on the other side of the door would have seen [his] legs and feet near the door." ECF No. 52-1 ¶ 9. Plaintiff further argues that as Officer Jimenez could see Plaintiff behind the door, it does not matter for purposes of the reasonableness inquiry that Officer Jimenez was not aiming at Plaintiff. ECF No. 52-6 at 8.

Second, Plaintiff argues that there is a question of fact as to whether the breaching rounds contained projectiles that could penetrate the door. *Id.* Officer Jimenez maintains that these rounds are "designed to dissipate into a fine powder upon contact with hard surfaces or objects like a doorjamb and lock mechanism." ECF No. 47-2 ¶ 21. However, Plaintiff argues that his injury demonstrates that the zinc rounds did not dissipate, as the x-ray of Plaintiff's injury showed metallic fragments in his wound. ECF No. 52-5 at 8. The hospital described his injury as a "gunshot wound to the left elbow with lateral epicondyle fracture and large wound with wood and metal debris." *Id.* at 2. According to Plaintiff's medical records from the Emergency Room, his elbow was "sliced open by the shot, to the point muscles and bones were clearly showing through the wound, and Plaintiff's humerus bone was fractured." ECF No. 52-6 at 8–9. Plaintiff maintains that while zinc bullets are not as deadly as a normal bullet, in this case, the wound speaks for itself, and he claims that if the bullet hit another part of the body, it could have been deadly. *Id.* at 9.

In response, Officer Jimenez explains that the "contents of the breaching rounds do not penetrate a wooden door, jamb or frame, only the gas and pressure resulting from firing—the shockwave created—can penetrate." ECF No. 47-2 ¶ 26. He argues that the presence of metal debris is exactly what Officer Jimenez described because the "micro-pulverized zinc powder carried with the shockwave of expanding gas and pressure from the discharged round penetrated the doorjamb and frame and was imbedded within the elbow wound, along with wood splinters from the frame." ECF No. 57 ¶ 11.

The Court concludes that based on the evidence proffered by Plaintiff, there are questions of material fact that preclude summary judgment on the excessive force claim against Officer Jimenez. Plaintiff has supplied sufficient evidence such that a reasonable juror could find that Officer Jimenez could see Plaintiff behind the door before he shot. He has also provided sufficient evidence such that a reasonable juror could conclude that if a person was standing behind the door, the breaching rounds could injure him.[3] Therefore, the Court concludes that based on this evidence, a reasonable juror could find that it was unreasonable for Officer Jimenez to use the breaching shotgun to enter the apartment.[4] Consequently, summary judgment is not warranted on this claim as to Officer Jimenez.

### b. Qualified Immunity

In the alternative, Officer Jimenez argues that he is entitled to qualified immunity on the excessive force claim. The doctrine of qualified immunity shields government officials from civil damages liability unless "the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013)

---

[3] In addition to the evidence supplied by Plaintiff, Officer Jimenez's concession that the shockwave from the zinc rounds could penetrate beyond the door further supports Plaintiff's argument that the rounds could injure someone standing behind the door. *See* ECF No. 47-2 ¶ 26.

[4] The parties also dispute whether the use of the breaching shotgun constitutes deadly force. This is an issue best left for trial, as the Court concludes that a reasonable juror could find Officer Jimenez's use of force excessive, even assuming that he did not use deadly force.

Officer Jimenez also argues that if the officers could see Plaintiff, then Plaintiff could see the officers and thus Plaintiff should have unlocked the door. ECF No. 47-1 at 10. However, Officer Jimenez does not explain how this argument factors into the reasonableness of the use of force and as such, the Court rejects this argument.

(internal quotation marks omitted). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

In this case, Officer Jimenez argues that he is entitled to qualified immunity because a dynamic breaching of a locked door is authorized and anticipated during the execution of a no-knock warrant. ECF No. 47-1 at 22–23. Therefore, Officer Jimenez argues that his actions were consistent with established law. *Id.* He also reiterates his arguments that there was no reason for Officer Jimenez to know that Plaintiff was behind the door and that Officer Jimenez was aiming the at doorjamb and lock mechanism, not inside the apartment or at Plaintiff. *Id.* at 23.

As to the first argument, Plaintiff is not challenging the legality of the warrant or claiming that Officer Jimenez was unauthorized to breach the apartment door. Instead, Plaintiff is arguing that the manner in which Officer Jimenez breached the apartment door was unreasonable given that he was using a breaching shotgun that could potentially injure someone standing behind the door and that he could see Plaintiff standing behind the door when he fired. Thus, the Court cannot conclude that Officer Jimenez is entitled to qualified immunity based on the argument that the warrant allowed for dynamic breaching of the apartment. As to the other arguments, as the Court discussed above, it is disputed whether Officer Jimenez could have seen Plaintiff behind the door. Whether Officer Jimenez could see Plaintiff behind the door also impacts the Court's analysis of Officer Jimenez's argument related to his aiming at the doorjamb and lock mechanism. Therefore, because there is a dispute of fact as to whether Plaintiff could be seen behind the door, the Court cannot conclude that Officer Jimenez is entitled to qualified immunity.

**II.     Second Claim: Failure to Intervene in Violation 42 U.S.C. § 1983**

Plaintiff's second claim is for failure to intervene, which was brought against all of the City Defendants, except the City of Rochester. As an initial matter, Plaintiff concedes that this claim can only be maintained against Officer Vaughn and Sgt. Osipovitch. ECF No. 52-6 at 10. Thus, the second claim is dismissed as to Officer Jimenez, Sgt. Alexander, Officer Johnson, Investigator Hickey, Sgt. Flanagan, Sgt. Ince, and City of Rochester Police Officer John Does #1-10.

Officer Vaughn and Sgt. Osipovitch argue that they are entitled to summary judgment on the failure to intervene claim because they had no realistic opportunity to intervene. ECF No. 47-1 at 19. First, they claim that they had no opportunity to intervene because they did not know that Plaintiff was standing behind the door. *Id.* Second, they argue that they had no opportunity to intervene because the time between when Defendants received the command to commence the breach and when they breached the apartment door, was only one minute. *Id.* at 18. In response, Plaintiff argues that for the same reasons as discussed in Section I, *infra*, there is a dispute of fact whether Officer Vaughn and Sgt. Osipovitch could see Plaintiff standing behind the door. ECF No. 52-6 at 10.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Sloley v. VanBramer*, 945 F.3d 30, 46–47 (2d Cir. 2019). "An officer may be held liable for preventable harm caused by the actions of other officers if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jackson v. City of New York*, 462 F. Supp. 3d 203, 226 (E.D.N.Y. 2020) (internal quotation marks omitted). "A police officer cannot be held liable in

damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). "Further, the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." *Id.*

For the same reasons as discussed in Section I, *infra*, the Court agrees that there is a question of fact as to whether Officer Vaughn and Sgt. Osipovitch could see Plaintiff behind the door. Therefore, the Court concludes that summary judgment is not warranted on that ground. As for the argument that there was insufficient time for Officer Vaughn and Sgt. Osipovitch to intervene, the only argument Officer Vaughn and Sgt. Osipovitch make is that the time between the command and the breach was a minute. ECF No. 47-1 at 18. Specifically, they argue that the evidence shows the command was given at 10:01 am to enter the house and that officers breached the apartment by 10:02 am, making it impossible for Officer Vaughn and Sgt. Osipovitch to intervene. *Id.*

However, the evidence in the record as to this claim is approximate and conflicting. For instance, two police reports submitted as evidence state that "at approximately 1001 hrs RPD SWAT executed a no-knock search warrant." ECF No. 47-2 at 57, 59. While another police report submitted as evidence states that at "approximately 1002 hours I . . . executed a search warrant . . . at 69 Avery Street (Upper Unit) in Rochester, NY." *Id.* at 42. Yet another police report states "[o]n 4/5/19 at 10:02 am RPO SWAT was assigned to assist with the service of a high risk search warrant at 69 Avery St." ECF No. 47-2 at 63. Because Officer Vaughn's and Sgt. Osipovitch's argument is premised on a specific timeline and the evidence proffered to support that timeline is approximate and conflicting, the Court cannot conclude that summary judgment is warranted on this ground.

**III.     Third Claim: Municipal Liability Under 42 U.S.C. § 1983**

Plaintiff's final claim is that the City of Rochester should be held liable under 42 U.S.C. § 1983 for failure to train the officers involved in this incident. ECF No. 52-6 at 10. The City of Rochester argues that Plaintiff has failed to support his municipal liability claim because he has failed to mention any policy, custom or practice, or any deficient training on behalf of the City. ECF No. 47-1 at 20. Specifically, the City of Rochester argues that (1) Plaintiff's claim concerns a single event, (2) he has not identified any person at the policy making level who supposedly failed to provide adequate training, and (3) he has failed to identify any alternatives from among a range of alternatives and a deliberate choice to follow one that would constitute a "policy" as defined in the applicable case law. ECF No. 57-5 at 10–11. In response, Plaintiff argues that summary judgment is not warranted because there is a question of fact as to whether the municipality properly trained the individual officers in this case. ECF No. 52-6 at 10.

A municipality cannot be held liable under 42 U.S.C. § 1983 unless the challenged action was undertaken pursuant to a municipal policy, custom, or practice. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To hold a municipality liable under § 1983, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted). "Absent an express municipal policy, the plaintiff may prove a municipal custom, policy or practice in several ways." *Ramos v. County of Suffolk,* No. 07-CV-1250, 2009 WL 10708571, at *2 (E.D.N.Y. Sept. 8, 2009). Failure to train employees is one such way. *See Wray*, 490 F.3d at 195.

Where a plaintiff seeks "to hold a municipality liable under a theory of failure to [train] . . . [he] must also show that the municipal policymaker acted with deliberate indifference." *Pipitone*

14

*v. City of New York*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation and internal quotation marks omitted). "While the Supreme Court has left open the possibility that a single incident could give rise to liability for failure to train or supervise, the Court has cautioned that only a 'narrow range' of circumstances would support such single-incident liability, where the 'unconstitutional consequences of failing to train [were] patently obvious.'" *Schnitter v. City of Rochester*, 931 F. Supp. 2d 469, 475 (W.D.N.Y. 2013), *aff'd* 556 F. App'x 5 (2d Cir. 2014) (citation omitted). Therefore, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62.

Here, Plaintiff does not present a pattern of similar constitutional violations and does not argue that the claim falls into the narrow range of circumstances where such a pattern is not required to state a claim for municipal liability. Instead, he suggests that there is a question of fact whether the officers in this case were properly trained, which is insufficient to support a municipal liability claim for failure to train at the summary judgment stage. *See* ECF No. 52-6 at 11. Consequently, the City of Rochester is entitled to summary judgment on this claim.

### IV.   Other Defendants

The Court also dismisses the claims as to Town of Ogden Police Officer John Does #21-30 and Town of Gates Police Officer John Does #31-40. Rule 12(b)(2) requires dismissal of claims against John Doe defendants who remain unidentified at this stage of a case's proceedings. *See Jackson v. Cnty. of Erie*, No. 17-CV-396S, 2020 WL 5642277, at *3 (W.D.N.Y. Sept. 22, 2020) ("Courts typically resist dismissing suits against John Doe defendants until the plaintiff has had

some opportunity for discovery to learn the identities of responsible officials. But where a plaintiff has had ample time to discover the identities of the unnamed officials and has not yet named or served them, dismissal without prejudice is proper." (citing cases)); *Lazo v. United States*, No. 06 CIV. 5438, 2007 WL 2948342, at *6 n.2 (S.D.N.Y. Oct. 9, 2007) ("Insofar as the Amended Complaint names as defendants John Does 1-6, the plaintiff has never identified or served these parties, and the claims against them must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction."). Here, Plaintiff has been given ample opportunity to learn the identities of these officers and serve them but has failed to do so. Therefore, all claims are dismissed as to Town of Ogden Police Officer John Does #21-30 and Town of Gates Police Officer John Does #31-40.

## CONCLUSION

For the foregoing reasons, the City Defendants' motion for summary judgment (ECF No. 47) is GRANTED IN PART AND DENIED IN PART. Plaintiff's First Claim is DISMISSED as to all Defendants except Officer Jimenez. Plaintiff's Second Claim is DISMISSED as to all Defendants except Officer Vaughn and Sgt. Osipovitch. Plaintiff's Third Claim against the City of Rochester is DISMISSED. The Clerk of Court is directed to terminate Defendants City of Rochester, Sgt. Alexander, Officer Johnson, Investigator Hickey, Sgt. Flanagan, Sgt. Ince, City of Rochester Police Officer John Does #1-10, Town of Ogden Police Officer John Does #21-30, and Town of Gates Police Officer John Does #31-40. The Court sets a status conference for July 2, 2025, at 10:30 am to hear from the parties about the progress of this action.

IT IS SO ORDERED.

Dated: June 10, 2025
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

16